UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY KASSOUF, et al., | ) | Case No. 1:14CV2656 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Mag. Judge Kenneth S. McHargh |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES LIABILITY CO., | ) | |
| | ) | MEMORANDUM |
| Defendant. | ) | AND ORDER |
| | ) | |

The plaintiffs Timothy Kassouf ("Kassouf") and Caroline Kassouf filed a

complaint against defendant United States Liability Insurance Group[1] (hereinafter,

"US Liability") in the Cuyahoga County (Ohio) Court of Common Pleas for

declaratory judgment in an insurance coverage dispute.  The defendant removed the

case to this court.   (Doc. 1.)

Timothy Kassouf fell on property owned by Betty Thomas ("Thomas") at 2950

East 55th Street in Cleveland, Ohio, "on or about" February 26, 2014.  (Doc. 19, PX

1, Kassouf aff., at ¶ 1.)  Plaintiffs filed suit against Thomas in Cuyahoga County

(Case No. 14-828383, "the underlying case"), and Thomas tendered the defense of

---

[1]  The defendant's name was subsequently corrected to "United States
Liability Company."  (Doc. 14.)

her case to the defendant in this case, US Liability, which refused to defend.  (Doc. 19, PX 2, Admissions, ¶ 14.)  US Liability did not participate at all in the underlying case.

Thomas and the plaintiffs settled the underlying case, and entered into a Consent Judgment.  (Doc. 19, PX 2, Admissions, ¶¶ 8, 9.)  Thomas agreed to a judgment in favor of Kassouf in the amount of $263,000.  (Doc. 3, Answer, at ¶ 6.)  Thomas assigned her rights against US Liability to the plaintiffs.  (Doc. 19, PX 1, Kassouf aff., at ¶ 4; doc. 19, PX 2, at [15]-[16].)  Plaintiffs then brought this supplemental petition against US Liability pursuant to Ohio Rev. Code § 3929.06, and seek to recover the $263,000 judgment from US Liability.

## I.  FACTUAL BACKGROUND

### A.  Insurance Policy

US Liability issued Thomas a Commercial Insurance Policy, number CL 1568893B, with a policy period of February 23, 2014 to February 23, 2015.  (Doc. 3, DX A.)  As to Coverages, the policy in relevant part stated that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 3, DX A, Sect. I.1.a.)

Thomas tendered the defense of the underlying case to US Liability, which informed Thomas that it would not indemnify or defend her against Kassouf's

claim.  (Doc. 19, PX 2, Admissions, ¶ 14.)  US Liability denied coverage to Thomas on the basis of an endorsement in the policy which contains an exclusion for "volunteer workers" and "casual laborers."  (Doc. 19, PX 2, Admissions, ¶ 15; doc. 1, compl., PX 3, Apr. 15, 2014 letter; doc. 3, DX A, at [38], Endorsement L-500 (1/06).)

The policy defines a "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you."  (Doc. 3, DX A, at [20], Sect. V.20.)  The endorsement defines a "casual laborer" as "any person providing work or materials to any insured for compensation of any type."  (Doc. 3, DX A, at [38], Endorsement L-500 (1/06).)

In his affidavit, Kassouf avers that he is an acquaintance of Thomas, and friends with her nephew.  (Doc. 19, PX 1, Kassouf aff., at ¶ 5.)  He avers that he "took it upon [him]self to feed the dog that was on Thomas's property because he was alone much of the time and [he] felt sorry for him."  Id. at ¶ 6.  Kassouf slipped and fell and sustained bodily injury when he went to the building to feed the dog. Id. at ¶ 7.  Kassouf avers that Thomas did not compensate him for feeding the dog, that she did not direct him to care for the dog, and that he was under no duty to do so.  Id. at ¶¶ 8, 9.  Further, Thomas did not determine the scope of duties he would do.  Id. at ¶ 10.  See also doc. 19, PX 2, at [14], Covenant Not to Execute and Assignment of Rights, at ¶¶ B,C,D,E,F.

## B.  Consent Judgment Entry

On Sept. 25, 2014, the Kassoufs and Thomas entered into a Consent Judgment Entry, which entered judgment in favor of the plaintiffs (Kassoufs) on the claims set forth in the complaint in the underlying suit, in the amount of $263,000. (Doc. 19, PX 2, at [12].)  The complaint in the underlying suit contained two counts: (1) premises liability, alleging inter alia a violation of Thomas' common law duty of care, in that Kassouf was legally on Thomas' property, that he was there to care for the dog, that Thomas knew he would enter to care for the dog, that he did not care for the dog at the direction of Thomas (and was under no duty to do so), that Thomas knew or should have known that ice had formed on the floor inside, and that Kassouf slipped on the ice and fell, shattering his right ankle; and, (2) loss of consortium.  (Doc. 19, PX 2, at [10]-[11].)

## II.  SUMMARY JUDGMENT

Summary judgment is appropriate where the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  See Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court held that:

> . . . Rule 56(c)[2] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

[2]  Now Rule 56(a).

> showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Id. at 324.

The Sixth Circuit in Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), has interpreted Celotex and two related cases, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions.  Street points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.  Street, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id.  In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party

opposing the motion.  Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990).

The standard is slightly different for a plaintiff-movant, who would bear the burden of proof at trial.  Kassouf must present evidence that would entitle Kassouf to a directed verdict if that evidence were not controverted at trial.  If the defendants respond to the motion with controverting evidence which demonstrates a genuine issue of material fact, Kassouf's motion must be denied.  However, if, after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendants, then summary judgment will be entered on behalf of the plaintiff-movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  See also Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1368-1369 (Fed. Cir. 2006);  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986) (movant must establish all essential elements of claim or defense); Orozco v. County of Yolo, 814 F.Supp. 885, 890 (E.D. Cal. 1993); McGrath v. City of Philadelphia, 864 F.Supp. 466, 473 (E.D. Pa. 1994) (citing National State Bank v. Federal Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992)).

## A.  Federal Standard Distinct from Ohio Standard

The plaintiff misstates the standard for summary judgment in federal court, relying on Ohio Rule of Civil Procedure 56; Dresher v. Burt, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996); and other state cases.  (Doc. 19, at 4-5.)

A federal court sitting in diversity must apply state substantive law, but federal procedural law.  Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie R.R. Co. v.

Tompkins, 304 U.S. 64 (1938); Sofford v. Schindler Elevator Corp., 954 F.Supp. 1459, 1460 (D. Colo. 1997).  Where there is a motion for summary judgment in a diversity case, the provisions of Federal Rule 56 control its determination.  Reid v. Sears, Roebuck and Co., 790 F.2d 453, 459 (6th Cir. 1986).  See also Gafford v. General Elec. Co., 997 F.2d 150, 165-166 (6th Cir. 1993); Reinke v. O'Connell, 790 F.2d 850, 851 (11th Cir. 1986).  This court will therefore apply the federal standards for summary judgment outlined above.

### III.  PLAINTIFFS' MOTION FOR JUDGMENT

The plaintiffs note that US Liability denied coverage of Thomas' claim because it deemed Kassouf to be a "volunteer worker" or "casual laborer," invoking the exclusion in the policy.  (Doc. 19, at 5.)  US Liability's April 15, 2014, letter to Thomas states:  "As loss this arises from 'bodily injury' to a 'volunteer worker' or a 'casual laborer' the Company disclaims coverage on the basis of endorsement L500 (1/06) cited above."  (Doc. 19, PX 2, at [20].)

In their motion for summary judgment, the plaintiffs contend that the policy provides Kassouf with coverage, because Kassouf does not come with the exclusion(s) for "volunteer workers" or "casual laborers."  The plaintiffs contend that the facts concerning whether Thomas directed Kassouf to work or volunteer for her were determined in the underlying lawsuit.  They point out that US Liability was given the opportunity to participate in the underlying action, but declined to do so. The plaintiffs argue that US Liability "cannot now challenge the finding the

Kassouf is not a 'volunteer worker' or casual laborer' in this supplemental action after they refused to participate in the underlying case." (Doc. 19, at 5-6.)

The plaintiffs assert that the judgment in the underlying case resolved this issue and binds US Liability to the judgment rendered therein, and that US Liability may not re-litigate any issues decided in that case, pursuant to the doctrine of res judicata. (Doc. 19, at 5.) On the next page of their brief, the plaintiffs invoke the doctrine of collateral estoppel. (Doc. 19, at 6.)

The common law doctrines of res judicata (also known as "claim preclusion") and collateral estoppel (or "issue preclusion") are frequently confused. See 18 Wright & Miller, Federal Practice and Procedure, § 4402. The Supreme Court has addressed the distinction, thus:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties.

Kremer v. Chemical Const. Corp., 456 U.S. 461, 467 n.6 (1982) (internal citations omitted). Stated differently, res judicata or claim preclusion prevents a party from relitigating a legal claim that was, or should have been, raised in a previous suit.

### A.  Res judicata (claim preclusion)

In Grava v. Parkman Twp., the Supreme Court of Ohio clarified the doctrine of res judicata (claim preclusion) in Ohio, and held:

> A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.

Grava v. Parkman Twp., 73 Ohio St.3d 379, 379, 653 N.E.2d 226, 227 (1995) (syllabus).  The Sixth Circuit states that the doctrine encompasses "all claims which were or might have been litigated in the first lawsuit."  In re Fordu, 201 F.3d 693, 703 (6th Cir. 1999) (quoting Stuhlreyer v. Armco, Inc., 12 F.3d 75, 77 (6th Cir. 1993)).

The Sixth Circuit has summarized the elements of claim preclusion (or res judicata) in Ohio, thus:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

In re Fordu, 201 F.3d at 703-704 (citing cases).

### B.  Collateral estoppel (issue preclusion)

The application of collateral estoppel, or issue preclusion, is governed the law of the state in which the district court is located.  McKinley v. City of Mansfield, 404 F.3d 418, 428 (6th Cir. 2005), cert. denied, 546 U.S. 1090 (2006); Brindley v. Best, 192 F.3d 525, 530 (6th Cir. 1999).  Under Ohio law,

> Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

Thompson v. Wing, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994) (citing

Whitehead v. Gen. Tel. Co., 20 Ohio St.2d 108, 254 N.E.2d 10 (1969) (syllabus)); see

also In re Fordu, 201 F.3d at 704.  In other words, Ohio holds that:

> . . . a fact or a point that was actually and directly at issue in a
> previous action, and was passed upon and determined by a court of
> competent jurisdiction, may not be drawn into question in a
> subsequent action between the same parties or their privies, whether
> the cause of action in the two actions be identical or different.

Knott v. Sullivan, 418 F.3d 561, 567-568 (6th Cir. 2005) (quoting Boone v. Spurgess,

385 F.3d 923, 927 n.4 (6th Cir. 2004)).  A matter cannot be barred under issue

preclusion unless the state court considered the "identical" issue, and the court's

rejection of the claim was "essential" to its judgment.  McKinley, 404 F.3d at 428-

429.  Under Ohio law, the burden of demonstrating that the elements of the

doctrine have been satisfied will rest with the party asserting that the doctrine

should apply.  Knott, 418 F.3d at 568.

### C.  Application of doctrines to plaintiffs' motion

The plaintiffs' argument in their brief in support of summary judgment at

times relies on res judicata, and at other times, collateral estoppel.  (Doc. 19, at 5-6.)

The plaintiffs contend that the facts in this case, particularly Kassouf's disputed

status, "were determined in the underlying lawsuit," that US Liability chose not to

participate, and thus cannot challenge "the finding that Kassouf is not a 'volunteer

worker' or 'casual laborer' in this supplemental action."  (Doc. 19, at 5-6.)  Plaintiffs

cite Howell v. Richardson (doc. 19, at 6), which applied the doctrine of collateral

estoppel, stating that:

> . . . the doctrine does not apply merely to those who were parties to the proceeding.  It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity.

Howell v. Richardson, 45 Ohio St. 3d 365, 367, 544 N.E.2d 878, 881 (1989).

Thus, the court will first examine whether plaintiffs satisfy the elements of collateral estoppel.  The third element (privity) does not appear to be contested. The first element is whether the fact or issue was actually and directly litigated in the prior action.  Thompson, 70 Ohio St.3d at 183, 637 N.E.2d at 923.

The plaintiffs assert that an insurance company is collaterally estopped from relitigating factual issues that were determined in the original action against its insured.  (Doc. 19, at 6, citing Patterson v. Tice, 91 Ohio App.3d 414, 632 N.E.2d 962 (Ohio Ct. App. 1994).)  Patterson involved a dispute over automobile insurance coverage.  The insurer had argued that the defendant was not an insured, because (1) he was not the driver, and (2) he was not resident with his parents, thus not covered by their policy.  The trial court found that the defendant was the driver, and was resident with his parents, thus, an insured.  The court of appeals held that the insurer was collaterally estopped from relitigating those factual issues, which had been determined in the original action against the defendant.  Patterson, 91 Ohio App.3d at 420, 632 N.E.2d at 966.

Here, the complaint in the underlying suit alleged a tort claim on the theory of premises liability, alleging a negligent violation of Thomas' common law duty of care.  (Doc. 19, PX 2, at [10]-[11].)  The Consent Judgment Entry entered judgment in favor of the plaintiffs on the claims set forth in the complaint.  (Doc. 19, PX 2, at

[12].)  The complaint did not specifically allege that Kassouf was or was not a "volunteer worker" or a "casual laborer."  Thus, it cannot be said that Kassouf's disputed status was a fact or issue "actually and directly litigated" in the underlying suit, nor did the trial court make any such finding (as the court did in Patterson).

However, the plaintiffs also assert that factual issues may be established in the original action by stipulation of the parties.  (Doc. 19, at 6, citing Bean v. Metropolitan Prop. & Liab. Ins. Co., 68 Ohio App.3d 732, 735, 589 N.E.2d 480 (Ohio Ct. App. 1990).)  In Bean, a husband was shot to death while sleeping, by his wife. The wife entered a plea of guilty to a lesser-included offense, but then committed suicide the day after her sentencing.  Bean, 68 Ohio App.3d at 733-734, 589 N.E.2d at 480.  The administrator of the husband had filed a wrongful death suit against the wife (prior to her sentencing and subsequent suicide), and two insurance companies.  The claims against one insurance company (Security) were settled. Bean, 68 Ohio App.3d at 734, 589 N.E.2d at 480.

Counsel for the administrator of the husbands's estate, and counsel for the estate of the wife stipulated that the death of the husband was the direct, proximate result of the actions of the wife; the wife pled guilty to voluntary manslaughter; and as a result of the wife's actions, the husband died.  Bean, 68 Ohio App.3d at 734, 589 N.E.2d at 480.  The case proceeded to a jury trial, which found for the administrator of the husband's estate.  When the judgment went unsatisfied, the administrator filed a supplemental petition, pursuant to Ohio Rev.

Code § 3929.06, against the (other) insurer, Metropolitan.  That case was resolved on summary judgment.  Bean, 68 Ohio App.3d at 734, 589 N.E.2d at 481.

In an appeal of the trial court's ruling, the court of appeals found that counsel had "entered into stipulations which were filed with the court and included in the jury instructions."  The court found these stipulations were an admission, agreement or concession made in a judicial proceeding that the wife pled guilty to voluntary manslaughter, thus, the stipulation relieved the parties from presenting evidence regarding liability in the wrongful death action.  Bean, 68 Ohio App.3d at 735, 589 N.E.2d at 481.  The court held that the administrator was bound by what he had stipulated.  Bean, 68 Ohio App.3d at 735, 589 N.E.2d at 481 (citing Morelock v. NCR Corp., 586 F.2d 1086, 1107 (6th Cir. 1978).)

The plaintiffs point to a Covenant Not to Execute and the Assignment of Rights, which they contend stipulated that Kassouf was not a "volunteer worker" or "casual laborer" of Thomas.  (Doc. 19, at 2; see also doc. 19, PX 2, at [14], Covenant Not to Execute and Assignment of Rights.)  This document does not explicitly stipulate or state that Kassouf was not a "volunteer worker" or "casual laborer" of Thomas.  Among its recitals, it states that Kassouf was legally on Thomas' property, that he was there to care for the dog, that Thomas knew he would enter to care for the dog, and that he did not care for the dog at the direction of Thomas (and was under no duty to do so).  (Doc. 19, PX 2, at [14], at ¶¶ B,C,D,E.)  The plaintiffs contend that these recitals establish that Kassouf was not a "volunteer worker" or "casual laborer" under the relevant language of the policy.  (Doc. 19, at 4, 7-9.)  However, the recitals do not address the issue of compensation, for example, which

is a relevant issue in determining whether Kassouf would be considered either a "volunteer worker" or "casual laborer" under the policy.  (Doc. 3, DX A, at [20], Sect. V.20.; DX A, at [38], Endorsement L-500 (1/06).)

In any event, the court cannot find that Kassouf's disputed status was a fact or issue "actually and directly litigated" in the underlying suit.  Kassouf has failed to present sufficient evidence concerning the first element of collateral estoppel under Ohio law (whether the fact or issue was actually and directly litigated) that would entitle him to a directed verdict if that evidence were not controverted at trial.

The second element is whether the fact(s) at issue were "passed upon and determined by a court of competent jurisdiction."  Knott, 418 F.3d at 567-568; Thompson, 70 Ohio St.3d at 183, 637 N.E.2d at 923.  In Patterson, the insurer was collaterally estopped from relitigating factual issues which had been explicitly determined by the trial court in the original action.  Patterson, 91 Ohio App.3d at 420, 632 N.E.2d at 966.  In Bean, counsel had entered into stipulations which were filed with the court and adopted by the court through inclusion in the jury instructions, which the court of appeals found to constitute an admission, agreement or concession made in a judicial proceeding.  Bean, 68 Ohio App.3d at 735, 589 N.E.2d at 481.  See also Nye v. Ohio Bd. of Examiners of Architects, 165 Ohio App. 3d 502, 507-08, 847 N.E.2d 46, 50 (Ohio Ct. App. 2006) (citing cases) (earlier factual admissions incorporated into agreed judgment entry, thus action deemed actually litigated and determined).

In contrast here, although the plaintiffs have provided Covenant Not to Execute and Assignment of Rights as an exhibit (doc. 19, PX 2, at [14]-[17]) to their brief in support of their motion, there is no indication that this document was filed with the court of common pleas, or that the court "passed upon and determined" the veracity of the document or the recitals within that document.  See, e.g., Teagle v. Lint, No. 18425, 1998 WL 178461, at *3 (Ohio Ct. App. Apr. 15, 1998) (issue was not actually & directly litigated in prior action because litigation terminated by settlement; there was no decision or judgment by court of competent jurisdiction). In addition, the agreement (although it purportedly binds the Kassoufs, see ¶¶ X, Y) was signed by Thomas only, not by Kassouf, and was not sworn, verified, or notarized.  See generally Watts v. Kroger Co., 170 F.3d 505, 508-509 (5th Cir. 1999) (signed statements not competent where unsworn and not notarized); Klein v. Manor Healthcare Corp., 19 F.3d 1433, 1994 WL 91786, at *6 (6th Cir. 1994) (TABLE, text in WESTLAW); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-969 (6th Cir. 1991) (unsworn statements not considered).

Kassouf has failed to present sufficient evidence concerning the second element of collateral estoppel under Ohio law (whether the fact or issue was passed upon and determined by a court of competent jurisdiction) that would entitle him to a directed verdict if that evidence were not controverted at trial.

The plaintiffs' motion for summary judgment, to the extent that it rests on the basis of collateral estoppel, is denied.

Turning to the doctrine of res judicata, the plaintiffs contend that, as a result of the final judgment in the underlying case, all defenses that US Liability could

have raised are barred from being raised in a subsequent proceeding by the doctrine of res judicata.  (Doc. 19, at 6, citing Corrigan v. Downing, 55 Ohio App.3d 125, 562 N.E.2d 923 (Ohio Ct. App. 1988).)  In Corrigan, the court held that, where one party failed to raise a defense in an action, that party is precluded by the doctrine of res judicata from raising the same legal issue in a subsequent action based on the same facts and involving the same parties.  Corrigan, 55 Ohio App.3d at 127, 562 N.E.2d at 924-925.  In Corrigan, the plaintiff failed to allege, as a defense to the defendant's earlier cognovit complaint, that the defendant had procured his signature to a cognovit note by means of fraudulent inducement, and since that defense could have been raised in the earlier action, the court found it barred by res judicata.  Id. at 127, 562 N.E.2d at 924.

The court will examine the elements of res judicata (claim preclusion) under Ohio law.  The first element is met here:  The Consent Judgment Entry, which entered judgment in favor of the Kassoufs on the claims set forth in the complaint in the underlying suit (doc. 19, PX 2, at [12]) is a valid final judgment by a court of competent jurisdiction.  See In re Fordu, 201 F.3d at 703-704; Grava, 73 Ohio St.3d at 379, 653 N.E.2d at 227 (syllabus).  The second element of res judicata is met as well:  This action involves the same parties or their privies as the first.  Id.  Through the assignment of rights, Kassouf stepped into Thomas' shoes.  The fourth element is also satisfied:  This action arises out of the same occurrence that was the subject matter (the fall, and premises liability) of the underlying suit.  See In re Fordu, 201 F.3d at 703-704; Grava, 73 Ohio St.3d at 379, 653 N.E.2d at 227 (syllabus).

The remaining (third) element of res judicata (claim preclusion) is that the second action raises claims that were or could have been litigated in the underlying suit.  See In re Fordu, 201 F.3d at 703-704; Grava, 73 Ohio St.3d at 379, 653 N.E.2d at 227 (syllabus).  The doctrine encompasses "all claims which were or might have been litigated in the first lawsuit."  In re Fordu, 201 F.3d at 703.  The scope of the policy coverage at issue was not litigated in the underlying suit.

In this case, the legal basis for the present action is Ohio Rev. Code § 3929.06, which provides for a "supplemental petition" to determine the insurer's contractual obligations.  Patterson, 91 Ohio App.3d at 419, 632 N.E.2d at 965. Such an action is, by its nature, supplemental to the initial proceeding establishing the liability of the tortfeasor.  Howell, 45 Ohio St. 3d at 367, 544 N.E.2d at 881.  Thus, as to the underlying tort claim, the prior action acts to preclude relitigation of the liability of the tortfeasor.  Id.

The injured claimant, Kassouf, was not required to join the insurer to the underlying suit, as he had no direct cause of action against the insurer; he had only the right to pursue US Liability via this supplemental suit under Section 3929.06. Howell v. Richardson, No. 86AP-678, 1987 WL 32218, at *3 (Ohio Ct. App. Dec. 29, 1987) aff'd, 45 Ohio St. 3d 365, 544 N.E.2d 878 (1989).

As to US Liability, generally an insurer has a duty to enter and defend a suit against its insured only against those claims which arguably arise under the terms of the insurance contract.  Howell, 1987 WL 32218, at *3.  Here, of course, US Liability asserted that it had no duty to defend the underlying suit in this case,

because there was no coverage of the claim at issue due to the policy exclusions.

(Doc. 1, compl., PX 3, Apr. 15, 2014 letter, with reservation of rights.)

> The issue in this supplemental petition, then,

> . . . is whether defendant has liability to plaintiff covered by the policy. That is, the judgment forms the reason defendant may be liable to plaintiff under R.C. 3929.06 which is initially determined by the nature, type and basis of the judgment plaintiff obtained against defendant's insured.

Howell, 1987 WL 32218, at *4.

The statute states that "the insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy in a declaratory judgment action or proceeding..."  Ohio Rev. Code § 3929.06(C)(1).  Since the supplemental petition under Section 3929.06 will always be based on a prior judgment, it provides a limited statutory exception to an application of res judicata, at least insofar as insurance coverage issues are concerned.  See, e.g., Howell, 45 Ohio St. 3d at 367, 544 N.E.2d at 881 (supplemental petition by its nature is supplemental to initial proceeding establishing liability of tortfeasor).

In Howell, for example, while the circumstances of the underlying tort were decided in a prior proceeding, the court implicitly held that the issue of the insurer's contractual obligations to the parties was reserved for the supplemental proceeding. Howell, 45 Ohio St. 3d at 368, 544 N.E.2d at 881.

The Supreme Court of Ohio held, in Bennett v. Swift & Co., that the rights of a plaintiff against a defendant-insurer in such a supplement petition "cannot rise above those of the insured, and any defenses which would have been available to

the insurer in an action by the insured are available to the insurer in the proceeding on such supplemental petition." Bennett v. Swift & Co., 170 Ohio St. 168, 168, 163 N.E.2d 362, 363 (1959) (syllabus); see also R&M Materials Handling, Inc. v. Cincinnati Ins. Co., No. 2013-CA-40, 2014 WL 1339675, at *4 (Ohio Ct. App. Mar. 14, 2014) (same); Cascone v. Alpha Transp. Sys., No. 67664, 1995 WL 363843, at *2 (Ohio Ct. App. June 15, 1995) (insurer may raise any defense it may have raised against insured).

Kassouf has failed to present sufficient evidence concerning the third element of res judicata under Ohio law that would entitle him to a directed verdict if that evidence were not controverted at trial.  The plaintiffs' motion for summary judgment, to the extent that it rests on the basis of res judicata, is denied.


D.  Applicable Policy Exclusions

A plaintiff proceeding under a supplemental petition is subject to the limitations and conditions of the insurance contract between the insurance company and the insured.  R&M Materials Handling, 2014 WL 1339675, at *4.  The plaintiff must prove, by a preponderance of the evidence, that the terms of the policy apply to the claim.  R&M Materials Handling, 2014 WL 1339675, at *4 (citing cases).  See also Howell, 45 Ohio St. 3d at 368, 544 N.E.2d at 881-882 (disposition turns on language of insurance contract).

Kassouf contends that he is entitled to coverage under the policy, under the assignment of rights from Thomas, and that he sustained a bodily injury on property that US Liability insured.  He asserts that, since the facts are not in

dispute, US Liability cannot establish that any exclusions in the policy apply.  (Doc. 19, at 7, 9.)

The complaint in the underlying suit alleged a tort claim on the theory of premises liability, alleging a negligent violation of Thomas' common law duty of care.  (Doc. 19, PX 2, at [10]-[11].)  As the defendants point out, whether Kassouf was a "casual laborer" or a "volunteer worker" was not material to Thomas' tort liability in the underlying suit.  (Doc. 20, at 7.)  The Consent Judgment Entry entered judgment in favor of the plaintiffs on the claims set forth in the complaint.  (Doc. 19, PX 2, at [12].)  The complaint did not specifically allege that Kassouf was or was not a "volunteer worker" or a "casual laborer."  The complaint alleged that Kassouf was on Thomas' property to care for the dog, that Thomas knew that Kassouf would enter the property to care for the dog, and that Kassouf did not care for the dog  at the direction of Thomas, and was under no duty to do so.  (Doc. 19, PX 2, at [9], ¶¶ 3-5.)

As stated earlier, US Liability denied coverage to Thomas on the basis of an endorsement in the policy which contains an exclusion for "volunteer workers" and "casual laborers."  (Doc. 19, PX 2, Admissions, ¶ 15; doc. 1, compl., PX 3, Apr. 15, 2014 letter; doc. 3, DX A, at [38], Endorsement L-500 (1/06).)

The policy defines a "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you."  (Doc. 3, DX A, at [20], Sect. V.20.)  The endorsement defines a "casual laborer" as "any person

providing work or materials to any insured for compensation of any type." (Doc. 3, DX A, at [38], Endorsement L-500 (1/06).) As the plaintiffs point out, a person cannot be both a casual laborer and a volunteer worker. (Doc. 21, at 5.)

Kassouf contends that he was not a "volunteer worker," and did not act "at the direction of and within the scope of duties determine[d] by" Thomas. (Doc. 19, at 7.) Kassouf also points out that the definition of "casual laborer" states the person must be compensated for his work. "It is undisputed that Kassouf did not receive compensation of any type from Thomas." (Doc. 19, at 7.) Although Kassouf contends that the issue of compensation is undisputed, he does not point to any evidence in the record which establishes that this assertion is undisputed[3]. Id. The plaintiffs then state: "Since the facts are already established, it is impossible for [US Liability] to show that its exclusions apply to Kassouf." (Doc. 19, at 7.)

Once again, the plaintiffs claim that the parties "stipulated" that Kassouf was not a "volunteer worker" or "casual laborer" in the underlying action. (Doc. 19, at 9.) As already discussed, the unsworn Covenant Not to Execute and the Assignment of Rights does not explicitly stipulate or state that Kassouf was not a "volunteer worker" or "casual laborer" of Thomas, and its recitals do not address the issue of compensation. (Doc. 19, PX 2, at [14].) See generally Watts, 170 F.3d at 508-509 (signed statements not competent where unsworn & not notarized); Klein, 1994 WL 91786, at *6; Dole, 942 F.2d at 968-969.

---

[3] US Liability in response to Requests for Admissions denied Kassouf did not receive any compensation (¶ 17), and denied that there was no evidence that Kassouf did any work for Thomas for compensation (¶ 23). (Doc. 19, PX 2, at 5-6.)

The court finds that there is a genuine issue of material fact concerning the applicability of the policy exclusions.  Kassouf has failed to present sufficient evidence concerning the policy exclusions that would entitle him to a directed verdict if that evidence were not controverted at trial.  The plaintiffs' motion for summary judgment is denied.

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant US Liability has filed a cross-motion for summary judgment. (Doc. 20.)  The defendant as movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the plaintiffs' case.

The defendant argues that US Liability is entitled to summary judgment because the insured, Thomas, knew that Kassouf would enter the premises to care for the dog that lived in the building.  (Doc. 20, at 5.)  The defendant points out that US Liability is collaterally estopped only from relitigating issues that were material to Thomas' tort liability in the underlying suit.  Id. (citing Howell, Patterson, and other cases).  The defendant notes that whether Kassouf was a "casual laborer" or a "volunteer worker" was not material to Thomas' tort liability in the underlying suit. (Doc. 20, at 7.)

However, US Liability argues that the allegations set forth in the complaint in the underlying suit sustain the conclusion that Kassouf was a "casual laborer" or a "volunteer worker."  (Doc. 20, at 7.)  The complaint alleges that "Kassouf was there to care for the dog that lives in the building" and that "Thomas knew that Plaintiff Kassouf would enter the premises to care for the dog."  (Doc. 20, at 7-8,

citing Compl.) The defendant moves from those plain allegations to an unsupported assertion that Thomas knew that Kassouf would enter the premises to care for the dog because Kassouf was a "casual laborer" or a "volunteer worker," caring for the dog in the course of employment by Thomas, or performing duties related to Thomas' business, or in the course of rendering or performing services. (Doc. 20, at 8.)

The defendant contends that, despite the allegation in the underlying complaint that Kassouf did not care for the dog at the direction of Thomas, and was under no duty to do so, Kassouf was on the property at the direction of Thomas. (Doc. 20, at 8.) Again, this is a totally unsupported assertion. US Liability argues, "If Kassouf was not on Thomas' property at the direction of Thomas, then at whose direction was Kassouf on Thomas' property?" (Doc. 20, at 9.) The defendant believes that it is "clear" that Kassouf was on her property at her direction, because the complaint states that Thomas knew that Kassouf would enter the premises to care for the dog. As plaintiffs point out, doc. 21, at 6, the conclusion drawn by defendant does not necessarily follow.

As discussed more fully above, although the plaintiffs did not meet their burden as movant with the burden of proof at trial, the court finds that the Kassoufs have designated specific facts showing that there is a genuine issue for trial. The defendant's motion for summary judgment is denied.

In addition, US Liability contends that, if the court finds there is a genuine issue of material fact, a jury must decide whether the defendant is obligated to pay the consent judgment entry. (Doc. 20, at 8.) The state court in Patterson found that

a  supplemental petition, pursuant to Ohio Rev. Code § 3929.06, is an action to determine the insurer's contractual obligations, rather than "an action to recover money."  Patterson, 91 Ohio App.3d at 419, 632 N.E.2d at 965.  In such a case, the right to trial by jury does not exist.  Id. at 420, 632 N.E.2d at 966.

## SUMMARY

For the reasons discussed above, the parties' motions for summary judgment (doc. 19, 20) are DENIED.

IT IS SO ORDERED.

Dated:   Sept. 17, 2015                     /s/ Kenneth S. McHargh
                                            Kenneth S. McHargh
                                            United States Magistrate Judge